**CARTERET SAVINGS BANK, FA, Appellant,**

v.

**Louis G. SHUSHAN, Donald A. Meyer, Rader Jackson, Jacqueline McPherson, Mitchell W. Herzog and Shushan, Meyer, Jackson, McPherson and Herzog.**

**CARTERET SAVINGS BANK, FA, Petitioner,**

v.

**Louis G. SHUSHAN, Donald A. Meyer, Rader Jackson, Jacqueline McPherson, Mitchell W. Herzog and Shushan, Meyer, Jackson, McPherson and Herzog, Respondents.**

**Honorable Nicholas H. Politan, United States District Judge for the District of New Jersey, Nominal Respondent.**

Nos. 89–5908, 89–5883.

United States Court of Appeals, Third Circuit.

Argued Aug. 14, 1990.

Decided Nov. 19, 1990.

Gerald A. Liloia, Anthony J. Sylvester (argued), Andrew M. Lankler, Riker, Danzig, Scherer & Hyland, Morristown, N.J., for appellant/petitioner.

Francis X. Crahay (argued), Joseph K. Cobuzio, Tompkins, McGuire & Wachenfeld, Newark, N.J., for appellees/respondents.

Before MANSMANN, GREENBERG and SEITZ, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

Plaintiff Carteret Savings Bank seeks review of the transfer of this action by the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1406(a) to the Eastern District of Louisiana. The district court transferred the case because it concluded that it did not have personal jurisdiction over the defendants. Carteret now appeals from the order of transfer and from the denial of its motion for reargument, modification or certification of the transfer order for appeal under 28 U.S.C. § 1292(b). Alternatively, Carteret has filed a petition for a writ of mandamus under 28 U.S.C. § 1651 asking us to direct the district court to vacate the transfer order and "reverse" the district court's jurisdictional determination. We will dismiss the appeal and partially grant the petition.

## I. BACKGROUND

The circumstances leading to the current proceedings are as follows. Carteret, which has its principal place of business in Morristown, New Jersey, engaged Louis Shushan of the New Orleans law firm of Shushan, Meyer, Jackson, McPherson and Herzog to represent it by preparing documents for a loan by Carteret to Three Lakeway Center Partnership for construction of a large project in Louisiana. Under the terms of the loan, Lakeway assigned Carteret its rights and interests in its construction contract with Algernon Blair, Inc., the general contractor, as security. In one of the loan documents, a "Contractor's Consent and Certification" to the as-signment, Carteret guaranteed obligations of Lakeway to Algernon Blair.

Lakeway declared bankruptcy and did not meet its obligations to Algernon Blair. In litigation in the United States District Court for the Eastern District of Louisiana Algernon Blair obtained a judgment against Carteret for almost $1,500,000 on Carteret's guarantee.[1]

As a response to the Louisiana litigation Carteret brought the diversity action now on appeal against the Shushan firm and the individual defendants (collectively referred to as "Shushan") in the District of New Jersey.[2] The complaint alleged that Shushan breached its fiduciary duties by failing to advise Carteret that Algernon Blair had been Shushan's prior client and remained such during the negotiations relating to the Lakeway loan. Carteret charged that Shushan failed to protect Carteret's interest in the terms of the consent and certification and that if Shushan had not breached its duty Carteret would not have executed the guarantee in the form presented and thus would not have been liable in the underlying Louisiana action to Algernon Blair. Carteret sought to recover its losses from Shushan.[3]

Undoubtedly, Shushan did much of its work on the loan in Louisiana. Thus, it filed an answer to Carteret's complaint which, in addition to denying any wrongdoing, asserted that the court lacked jurisdiction over it "by reason of insufficiency of minimal contact." Shushan then filed a motion to dismiss the complaint on that ground. At a hearing on this motion on May 22, 1989, the district court invited Shushan to move for a transfer of venue to Louisiana and thus did not rule on the motion to dismiss. While the court did not specify whether it contemplated that venue might be transferred under 28 U.S.C. § 1404(a), providing for transfers for the

---

1. *See SNS Contractors v. Algernon Blair, Inc.,* 892 F.2d 430 (5th Cir.1990).

2. We note that the last names of the individual defendants constitute the name of the Shushan firm. We infer that they are the partners or principals in that firm, though this is not alleged.

3. Carteret prepared an amended complaint but it was not filed and we need not describe its *expanded allegations.* In Shushan's brief it explains that "[a]lthough the motion for leave to file an amended complaint was never granted, for purposes of argument it was treated as if it had."

convenience of parties or witnesses, or 28 U.S.C. § 1406(a), authorizing transfers when venue is mislaid, it did indicate that it wanted "the essential information about *forum non conveniens*" and in particular mentioned the location of witnesses and documents and the situs for discovery, thereby implying that the court contemplated a transfer under the former section.

In response to the court's suggestion, though Shushan still primarily sought to have the complaint dismissed for lack of *in personam* jurisdiction, it filed a motion for transfer of venue. Shushan did not cite the statutory basis for the change of venue in its motion but at a hearing on the motions to dismiss and to transfer venue on June 28, 1989, Shushan said it was seeking the transfer on the grounds of *forum non conveniens*. During the hearing the district court indicated that it lacked *in personam* jurisdiction over Shushan. When Carteret then suggested that the action would be time-barred in Louisiana, the court said that it would exercise its supervisory powers and transfer the case to the Eastern District of Louisiana under section 1406(a) which provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Thus, on June 28, 1989, the district court executed an order, entered on June 29, 1989, reciting that:

> (1) This court has no jurisdiction over the defendants in connection with the within complaint; and
>
> (2) Under the provision of [28 U.S.C. § 1406(a)] the within matter is transferred to the United States District Court for the Eastern District of Louisiana.[4]

Carteret promptly filed its motion for reargument. Alternatively it sought an order amending the order of June 29, 1989, to delete paragraph 2 providing for the change in venue and, as a second alternative, it asked for entry of an order pursuant to 28 U.S.C. § 1292(b) certifying the order of June 29, 1989, "as appropriate for immediate appeal."

The district court ruled on Carteret's motion in an opinion and order of October 10, 1989. *Carteret Savings Bank v. Shushan,* 721 F.Supp. 705 (D.N.J.1989).[5] After reviewing the background of the case the court concluded that Shushan does "not have sufficient contacts with New Jersey for this court to exercise general jurisdiction" over it. *Id.* at 708. It then found that Carteret could not demonstrate that the court "can exercise specific jurisdiction by showing that [its] cause of action directly relates to [Shushan's] contacts with New Jersey and that [Shushan] voluntarily and purposefully established such contacts with New Jersey." *Id.* Thus, the court concluded that it could not exercise jurisdiction over Shushan.

The court next dealt with Carteret's argument that it was powerless to transfer the case under section 1406(a) authorizing transfers "in the interest of justice" if the plaintiff lays venue "in the wrong division or district." Carteret asserted that section 1406(a) was not applicable as venue was proper in the District of New Jersey under 28 U.S.C. § 1391(a).

The court concluded that section 1406(a) "vests this Court with sufficient power to transfer this case, whether venue is characterized as correct or incorrect under § 1391(a)." 721 F.Supp. at 709. The court explained that section 1406(a) refers to transfers if a case is filed in the wrong division or district and not wrong venue and it pointed out that in *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), the Supreme Court upheld application of section 1406(a) in a case

---

4. Paragraph 2 of the order cited 28 U.S.C. § 1046(a) but 28 U.S.C. § 1406(a) was intended.

5. In the opinion the court recited that it had "issued an Order dismissing this matter for lack of personal jurisdiction and transferring it, pursuant to 28 U.S.C.A. [§ ] 1406(a), to the United States District Court for the Eastern District of Louisiana." 721 F.Supp. at 706. This was partially incorrect as the district court found that it did not have *in personam* jurisdiction but did not dismiss the case.

of improper venue in which the transferring court lacked personal jurisdiction over the defendants. 721 F.Supp. at 709. The district court indicated that the Supreme Court "evidenced a clear intention to avoid 'time consuming and justice defeating technicalities'" and that the Supreme Court further concluded "that under certain circumstances it would be inequitable to dismiss a lawsuit solely because the plaintiff made a miscalculation on an uncertain and 'elusive fact of the kind upon which venue provisions often turn.'" *Id.* The district court then noted that the Supreme Court found that the "'interest of justice' required transfer particularly when if the matter was dismissed the plaintiff would lose a substantial part of his cause of action due to the statute of limitations." *Id.* Ultimately the district court concluded that:

> This Court finds that the same analysis must be applied to a plaintiff who has made a proper calculation as to the question of venue, but who has made a reasonable miscalculation on the similarly elusive question of personal jurisdiction. Fundamental concepts of fair play and substantial justice require this result. A litigant who has commenced a timely action within the federal system should not be penalized with the loss of that cause of action solely because he has made a reasonable error as to the existence of personal jurisdiction.

*Id.* at 709–10.

It is thus clear that the district court was concerned with the possibility that a new action by Carteret in Louisiana would be barred by the statute of limitations. While the district court did not address Carteret's request for certification for appeal under 28 U.S.C. § 1292(b), Carteret's brief includes the cryptic explanation that "the District Court has advised that it was de-

nied" and in fact the district court did not certify the case under 28 U.S.C. § 1292(b).

Carteret then appealed from the orders of June 29, 1989, and October 10, 1989, and filed its petition for mandamus in this court requesting that we issue a writ directing the district court to vacate and set aside the order transferring venue and "reverse" the order of the district court that it lacked personal jurisdiction over Shushan. Shushan has moved to dismiss the appeal for want of appellate jurisdiction and opposes granting the writ of mandamus. We will dismiss the appeal but will grant the petition to the extent that we will direct the district court to vacate paragraph 2 of the order entered June 29, 1989, transferring venue.

## II. APPEALABILITY

 We turn first to Shushan's motion to dismiss the appeal. Shushan asserts that the appeal is premature as Carteret may pursue this case in the Eastern District of Louisiana and may appeal the order of transfer to the Court of Appeals for the Fifth Circuit at the conclusion of the district court case in Louisiana. There is merit to this argument as our general rule is that orders transferring venue are not immediately appealable. *See Nascone v. Spudnuts, Inc.,* 735 F.2d 763, 764 (3d Cir. 1984); *McCreary Tire & Rubber Co. v. CEAT S.p.A.,* 501 F.2d 1032, 1034 (3d Cir. 1974). Furthermore, it appears that the Court of Appeals for the Fifth Circuit will entertain an appeal from the transfer order at the end of the case in the district court. *See Dubin v. United States,* 380 F.2d 813 (5th Cir.1967).[6] Accordingly, inasmuch as the matter was not certified under 28 U.S.C. § 1292(b) we can exercise appellate jurisdiction only if some reason appears for an exception to the general rule.[7]

---

**6.** Our result is not dependent on whether that court would have entertained an appeal from the transfer order. We do, however, note that in *Dubin* the case was transferred from the Northern District of Ohio to the Southern District of Florida in which a motion for retransfer was denied. After the plaintiff recovered a judgment, the defendant appealed advancing the "sole contention ... that transfer of the action

from the Ohio District to the Florida District was in error." 380 F.2d at 814. The appeal, however, was probably from the denial of retransfer. *Id.* at 816. *See also Mayo Clinic v. Kaiser,* 383 F.2d 653 (8th Cir.1967).

**7.** In unusual circumstances an order on a transfer application can have sufficient "indicia of finality" to be appealable. Thus, in *United*

■ Carteret argues that this case is distinguishable from the usual case in which venue is transferred because the transfer was predicated upon the district court's conclusion that it lacked *in personam* jurisdiction over Shushan. Carteret views this circumstance as supporting three somewhat different yet related theories by which appellate jurisdiction may be sustained: (1) a finding of lack of jurisdiction is final in itself; (2) the jurisdictional finding may be severed from the transfer order and, when standing alone, is final; and (3) the jurisdictional ruling is collaterally final under *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The first and second theories are essentially the same as each depends on the theory that a court's ruling that it does not have personal jurisdiction is final and appealable, the second theory merely positing a method to circumvent a possible complicating factor.

We reject these contentions. We are aware of no authority to support the proposition that simply because a district court determines that it does not have *in personam* jurisdiction over a party its order is *per se* final regardless of its other provisions. Indeed, paragraph 1 of the order of June 29, 1989, though reciting that the court did not have jurisdiction over Shushan, made no disposition at all and thus was significant only as a predicate for paragraph 2 which provided for the transfer. Accordingly, cases in which the court determines that it does not have jurisdiction over the defendant and dismisses the action are distinguishable from this case as there the cases are terminated at the district court level throughout the entire federal system. *See Mesalic v. Fiberfloat Corp.*, 897 F.2d 696 (3d Cir.1990).

States v. Berkowitz, 328 F.2d 358, 360 (3d Cir.), cert. denied, 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964), orders denying transfer were immediately appealable because the transferor court lacked jurisdiction over the defendant and the suit would have been time barred in any other forum. Similarly an order transferring an action to a *state* court on the ground that the district court lacked subject matter jurisdiction was appealable. *McLaughlin v. ARCO Polymers, Inc.*, 721 F.2d 426, 428 n. 1 (3d Cir.1983). Those cases are distinguishable from the situation be-

Carteret's strongest case to support appealability, *Reuber v. United States*, 773 F.2d 1367 (D.C.Cir.1985), is not consistent with our jurisprudence and is distinguishable. In *Reuber* a defendant, Litton Industries, obtained a dismissal of a complaint against it in the United States District Court for the District of Columbia for lack of personal jurisdiction. At the same time the district court transferred the action against the remaining defendants to the District of Maryland. The plaintiff then appealed from the order dismissing Litton to the Court of Appeals for the District of Columbia Circuit. Litton moved to dismiss the appeal on the ground that the action was still pending in Maryland. The court denied the motion as it regarded the order dismissing Litton as final within 28 U.S.C. § 1291. The court concluded that the provision of Fed.R.Civ.P. 54(b) which provides that, in the absence of a direction of the entry of a final judgment, an order "which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties" did not require that the plaintiff abide the outcome of the case in Maryland before it could appeal the dismissal of Litton.[8] *Reuber's* principal focus was thus on the negative proposition that Rule 54(b) was not a bar to the appeal.

The court then affirmatively indicated that the order of dismissal was final for "[w]hen a district court has disassociated itself from a case in all respects, it has made its 'final decision.' That is what occurred in this case." 773 F.2d at 1368. The problem, as we see it, is that the district court "disassociated itself" from all the defendants, including those remaining in the case after the transfer. Thus, it is

fore us as in each the order on the transfer application effectively terminated the case in the federal courts. The order here had no such consequence as it permitted the case to go forward in Louisiana and thus saved it from being dismissed.

**8.** While the court did not say so it is clear that there must not have been a direction for entry of a final judgment under Rule 54(b).

not easy to understand why, if the case was appealable as to Litton the order of transfer would not have also been appealable.[9] But we certainly would not consider the mere fact that a district court "disassociated itself" from all the defendants as rendering an order final and appealable because we do not regard orders transferring venue as immediately appealable and we think that this is the consensus view. *See Nascone v. Spudnuts, Inc.*, 735 F.2d at 764. Therefore we cannot accept the reasoning in *Reuber*. In any event, *Reuber* is distinguishable from this case because there the appeal was from an order of dismissal whereas here Carteret seeks to appeal from an order which did not dismiss anybody or anything.

Carteret also relies on *Bradshaw v. General Motors Corp.*, 805 F.2d 110 (3d Cir. 1986), but that case is of even less help to it than *Reuber*. In *Bradshaw* the plaintiff brought an action in a state court charging the defendant with engaging in racial discrimination and tortious conduct against her deceased husband. The case was removed to the district court where it was dismissed. Carteret cites the case for the unremarkable proposition that it is "well-settled that a ruling of a District Court *finding no personal jurisdiction* over all defendants is typically appealable under 28 U.S.C. § 1291."[10] Undoubtedly this is true but only if the district court dismisses the case as it did in *Bradshaw*.

Finally, we reject Carteret's reliance on the collateral order doctrine as a basis for appellate jurisdiction. In *Nascone v. Spudnuts, Inc.*, 735 F.2d at 772–73, we indicated that "[O]rders granting or denying motions to transfer under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a) are not immediately appealable as collaterally final orders. It is irrelevant for these purposes whether the motion to transfer is based on a forum selection clause, the convenience of witnesses, or other factors."

We recognize, of course, that Carteret urges that the circumstance that the trans-fer was predicated on the jurisdictional ruling distinguishes this case from transfers for other reasons for purposes of the collateral order doctrine. But in view of *Van Cauwenberghe v. Biard*, 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988), we reject this argument. There the Court indicated that an order denying a motion to dismiss for lack of personal jurisdiction is not an immediately appealable collateral order because the defendant's "right not to be subject to a binding judgment may be effectively vindicated following final judgment...." *Id.* at 527, 108 S.Ct. at 1952. It is, of course, obvious that *Van Cauwenberghe* is distinguishable from this case as there the defendant's interest in avoiding entry of a judgment in a forum lacking jurisdiction over him was at stake and here Carteret's choice of forum is involved. But this distinction does not help Carteret, for a defendant's claim not to be subject to a judgment in a court without jurisdiction has a due process foundation and thus is qualitatively more significant than a claim of a plaintiff to litigate in one forum rather than another. The difference between the interests sought to be vindicated is significant because one of the requisites for collateral finality is that the right involved is "too important to be denied review." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 276, 108 S.Ct. 1133, 1136, 99 L.Ed.2d 296 (1988). Furthermore, plaintiffs are voluntarily in court. We therefore conclude that the collateral order doctrine is not applicable and, as we have already rejected Carteret's other proffered bases for jurisdiction, we will dismiss the appeal.

## III. MANDAMUS

The petition for a writ of mandamus raises two questions concerning section 1406(a). The first is whether the section is applicable when venue is not mislaid and the second is whether the section may be invoked over the objection of a plaintiff

---

**9.** There is no indication in the opinion that the plaintiff attempted to appeal from the order of transfer.

**10.** Actually we question whether *Bradshaw* can be properly cited for the point but we have no need to pursue the issue.

who selected the "wrong division or district". We conclude that regardless of the scope of section 1406(a) the district court committed a clear error of law when it transferred the case over Carteret's objection and we further conclude that we should exercise our discretion to grant the writ of mandamus to direct the district court to vacate its order for transfer. We thus will explain but not resolve the first question.

The question of the meaning of section 1406(a) was implicated in *United States v. States v. Berkowitz*, 328 F.2d 358 (3d Cir.), cert. denied, 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964). There the district court concluded that a transfer could not be predicated on section 1406(a) in a case in which venue was proper but the court did not have *in personam* jurisdiction because the section applies only if venue is laid in the "wrong division or district." On appeal we avoided deciding what we characterized as the "novel and intricate contention" that section 1406(a) is broad enough to encompass a transfer for lack of personal jurisdiction as we remanded the matter to the district court to determine whether the requirements for a transfer under 28 U.S.C. § 1404(a) had been met.

The issue left open in *Berkowitz* remains open in this circuit.[11] However, other courts of appeal have held that transfers can be made under section 1406(a) even though venue has been correctly laid in the district court. See *Porter v. Groat*, 840 F.2d 255 (4th Cir.1988); *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77 (2d Cir.1978); *Taylor v. Love*, 415 F.2d 1118 (6th Cir.1969), cert. denied, 397 U.S. 1023, 90 S.Ct. 1257, 25 L.Ed.2d 533 (1970); *Mayo Clinic v. Kaiser*, 383 F.2d 653 (8th Cir. 1967); *Dubin v. United States*, 380 F.2d 813. These courts cited and relied on *Goldlawr v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 discussed by the district court

in this case, though in *Goldlawr* venue was mislaid so that that case was not necessarily controlling. The fact is that, as the court acknowledged in *Porter v. Groat*, only a broad construction of section 1406(a) can justify a transfer where venue is proper. The *Porter* court, while allowing a transfer though venue was not mislaid, indicated that if it was "applying the statute as a matter of first impression" it would not have done so. 840 F.2d at 257.

This case, however, arises in an unusual context. Here the plaintiff, Carteret, has resisted the transfer. It asked the district court to delete paragraph 2 of the order of June 29, 1989, providing for the transfer and thus leave standing only paragraph 1 of that order finding that the court did not have jurisdiction over the defendant, Shushan. It has adhered to that position in this court and at oral argument made it perfectly clear that it was willing to have this action dismissed in the district court for want of jurisdiction as it was prepared to run the risk of an affirmance of an order of dismissal regardless of the consequences. Accordingly, this case differs from *Porter, Corke, Taylor, Mayo Clinic*, and *Dubin*, cited above, as in those cases it was the plaintiff who sought the transfer.[12]

This distinction is outcome determinative because the courts have repeatedly explained that the expansive reading of section 1406(a) allowing transfer when venue is proper is adopted as an equitable remedy to circumvent an obstacle to an expeditious and orderly adjudication on the merits. *Porter*, 840 F.2d at 257; *Corke*, 572 F.2d at 79–80; *Taylor*, 415 F.2d at 1120–21. In short, section 1406(a) is read broadly so that a plaintiff properly laying venue but unable to proceed in the transferor court because of jurisdictional problems does not lose its day in court by reason of the run-

---

**11.** The district courts in this circuit have come to inconsistent conclusions on the question of whether section 1406(a) authorizes a transfer when venue is proper in the transferor court. Compare *Shaw v. Boyd*, 658 F.Supp. 89 (E.D.Pa. 1987) and *Young v. Cuddington*, 470 F.Supp. 935 (M.D.Pa.1979) (transfer granted under section 1406(a)) *with Bakaj v. Levine*, 733 F.Supp. 951

(E.D.Pa.1990) and *Lau v. Change*, 415 F.Supp. 627, 631 n. 6 (E.D.Pa.1976) (transfer not permitted under section 1406(a) but allowed under section 1404(a)).

**12.** That was also true in the district court cases cited in footnote 11.

ning of the statute of limitations in another forum.

We know of no authority to support a conclusion that a plaintiff properly laying venue may be compelled to accept a transfer under section 1406(a) against its wishes.[13] A somewhat analogous situation arises when a complaint is dismissed for failure to state a cause of action but the plaintiff is granted leave to amend. In that situation if the plaintiff wishes it may, at its peril, refuse to amend even though able to do so, and thus stand on the allegations of the original complaint and appeal. *See Borelli v. City of Reading*, 532 F.2d 950 (3d Cir.1976). Here the case was transferred under section 1406(a) because the district court concluded that Carteret had not demonstrated that the court had personal jurisdiction over Shushan. Carteret believes that this conclusion was wrong and we cannot understand why "the interest of justice," the term used in 28 U.S.C. § 1406(a), required Carteret to accept a remedy it did not want and thus lose any opportunity to appeal the jurisdictional ruling. Accordingly, we hold that the district court exceeded its authority when it compelled Carteret to accept the transfer.

We realize that it is possible that the interest of persons not controlling the litigation might be implicated in a plaintiff's decision to refuse a transfer. In such a case a court might be justified in compelling the plaintiff to accept a transfer, particularly if a plaintiff's refusal to do so could result in the dismissal of an action that might be barred by the statute of limitations if reinstituted in another district. But here the plaintiff objecting to the transfer is a financial institution represented by retained attorneys and there are no interests at stake entitled to protection beyond those of the parties. Furthermore, Shushan did not want the case transferred by the district court as it first moved to dismiss and only filed the motion to transfer at the urging of the court. Even then its motion asked that transfer be considered only "in the event its pending Motion for dismissal of [Carteret's] complaint is not granted." We also point out that while Carteret may be waiving an important remedy, even constitutionally based procedural rights may be knowingly and intelligently waived.[14] *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972).

We are well aware, of course, that the mere fact that the district court has made an error is not in itself the basis for the issuance of a writ of mandamus. In general, we may issue the writ only if a district court did not have the authority to make an order. *Air–Shields, Inc. v. Fullam*, 891 F.2d 63 (3d Cir.1989). Furthermore, the decision to issue the writ is largely committed to the discretion of the issuing court and, as it is an extraordinary remedy, it should be issued only in exceptional circumstances and only if the party seeking the writ meets its burden to demonstrate that its right to the writ is clear and indisputable. *Delgrosso v. Spang*, 903 F.2d 234, 237 (3d Cir.1990). As we indicated in *Lusardi v. Lechner*, 855 F.2d 1062, 1069 (3d Cir. 1988), "[t]he clear error should at least approach the magnitude of an unauthorized exercise of judicial power....". Finally, the party seeking the relief "must have no

---

**13.** We are not implying that if venue is improper a plaintiff may be required to accept a transfer as opposed to a dismissal. That issue is not before us, as venue was properly laid here. The dissent points to *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953), and *Gulf Research & Development Co. v. Harrison*, 185 F.2d 457 (9th Cir.1950), as cases transferred by district courts under section 1406(a) over plaintiffs' objections. But in those cases the district courts held that venue was mislaid so that the courts were acting within the precise terms of section 1406(a). Thus, the only issue raised by the petitions for mandamus was that the district court had erroneously applied

the law, a conclusion very different for mandamus purposes than a determination that a court has exceeded its powers. *See Bankers*, 346 U.S. at 382, 74 S.Ct. at 147–48; *Gulf Research*, 185 F.2d at 495. Furthermore, there is no suggestion in the opinions that the plaintiffs asked the district court to dismiss the actions rather than transfer them.

**14.** As we have already observed, at the oral argument in the district court Carteret indicated that its action was then time-barred in Louisiana. After hearing oral argument we are not certain that it adheres to that position.

other adequate means to attain the desired relief." *Delgrosso,* 903 F.2d at 237.

We find that the prerequisites to issuance of the writ, as difficult as they are to satisfy, are present here. We hold that the district court could not transfer this case to the Eastern District of Louisiana pursuant to section 1406(a) over Carteret's objection. Thus, this is a case in which the predicate for the court's exercise of discretion was simply not established and we therefore are satisfied that the order of transfer approached the magnitude of an unauthorized exercise of judicial power. This is a case in which mandamus is appropriate "to review a transfer motion which the district court could not properly have made...." *McCreary Tire & Rubber Co. v. CEAT,* 501 F.2d at 1034. Furthermore, mandamus is appropriate for if it is not issued there is no other adequate means to avoid the transfer.[15]

Carteret asks in its petition for the writ of mandamus that we "reverse" the order of the district court on the jurisdictional issue. This we will not do. The effect of our writ will be to delete paragraph 2 of the order of June 29, 1989, and thus only paragraph 1 which finds that the court does not have jurisdiction will remain. We can only conceive of two courses which the case can then take in the district court. The court may dismiss the case because it has determined that it does not have *in personam* jurisdiction over Shushan in which event Carteret will have an adequate remedy to challenge the jurisdictional ruling by appealing from the final judgment. Alternatively, it is possible that the district court might grant Shushan's motion to transfer venue under section 1404(a) for the convenience of the parties as it has never been ruled on and thus is still pending. In that circumstance it would be difficult to understand how Carteret will have been aggrieved by the jurisdictional ruling as a transfer under section 1404(a) can be granted even if the court has jurisdiction over the parties.[16] In any event the criteria for the extraordinary remedy of mandamus have not been met on the jurisdictional issue.

In view of the foregoing we will dismiss the appeal docketed at No. 89–5908 and grant a writ of mandamus in No. 89–5883. The district court will be directed to vacate paragraph 2 of the order of June 29, 1989.

Each party shall bear its own costs.

SEITZ, Circuit Judge, concurring in part, dissenting in part.

I join the decision to dismiss Carteret's appeal, but I dissent from the majority's determination to issue a writ of mandamus.

15. The possibility that Carteret ultimately may be able to appeal from the transfer order to the Court of Appeals for the Fifth Circuit does not alter our result. *See Nascone v. Spudnuts, Inc.,* 735 F.2d at 772–73. The dissent indicates that our opinion seems to moot the procedure approved in *Gulf Research & Development Co. v. Leahy,* 193 F.2d 302 (3d Cir.1951), *aff'd by an equally divided court,* 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 668 (1952), a continuation of the litigation implicated in *Gulf Research & Development v. Harrison,* 185 F.2d 457, described in footnote 13, *supra,* but we do not see why this is so. *Leahy* involved an action transferred to the District of Delaware from the Southern District in California on the grounds of improper venue. The plaintiffs moved in Delaware for a retransfer and when that was denied petitioned for a writ of mandamus in this court. We denied the petition because we recognized that the petitioners "will have an adequate remedy by appeal from any judgment which may be entered against them in the Delaware District Court." *Id.* at 304. Thus, we had an alternative method

to review the jurisdictional ruling and there was no reason to grant mandamus. Inasmuch as we had appellate jurisdiction it was certainly not "necessary" to issue the writ in aid of our jurisdiction. 28 U.S.C. § 1651. Here the situation is different for if the matter is transferred we will lose jurisdiction over it. Accordingly, if we read *Leahy* to be applicable here it can only be because ultimately an appeal of the transfer order can be taken to the Court of Appeals for the Fifth Circuit. That would lead to a conclusion that mandamus is never available in the transferor circuit as an appeal will be possible at the conclusion of the proceedings in the transferee district court.

16. Our result, of course, is without prejudice to Shushan's motion under motion section 1404(a). We express no opinion on whether it would be appropriate for a court to transfer a case under that section if it determines that it does not have *in personam* jurisdiction over the defendant as that issue is not before us. We are only pointing out that it might happen.

The majority holds that the district court "exceeded its authority" by transferring this case under 28 U.S.C. § 1406(a) over plaintiff's objection in the absence of jurisdiction over the defendants. As the majority states, "we cannot understand why 'the interest of justice,' ... required Carteret to accept a remedy [transfer] it did not want...." Majority Opinion, at p. 232–33.

There is nothing in the plain language of § 1406(a) to which the majority may point in support of its position. The word "plaintiff" does not appear in the statute, as that statute provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Nor is there any language in § 1406(a) to suggest that a district court's authority is completely circumscribed by a plaintiff's resistance to the proposed transfer. In fact, district courts have transferred cases under § 1406(a) over a plaintiff's objection. *See Gulf Research & Dev. Co. v. Harrison*, 185 F.2d 457, 459–60 (9th Cir.1950); *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 382, 74 S.Ct. 145, 147, 98 L.Ed. 106 (1953). Although the plaintiffs in *Harrison* and *Bankers Life* disputed the transferor court's venue ruling, I see no principled distinction, for mandamus purposes, between objections to venue and personal jurisdiction.

The majority's concern that without mandamus "there is no other adequate means to avoid the transfer," Majority Opinion, at p. 233, is misdirected. What is critical is whether appellate review of the merits of our district court's jurisdictional determination will be available in the United States Court of Appeals for the Fifth Circuit. I think that the answer is that it will be. *See Bankers Life*, 346 U.S. at 383, 74 S.Ct. at 148 (citing *Gulf Research & Dev. Co. v. Leahy*, 193 F.2d 302 (3d Cir.1951), *aff'd by an equally divided court*, 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 668 (1952)). The majority's ruling seems to moot the procedure approved by our court in *Leahy*, 193 F.2d

at 304; *see also Harrison*, 185 F.2d at 459; *cf. Nascone v. Spudnuts, Inc.*, 735 F.2d 763, 772–73 & n. 9 (3d Cir.1984), and leaves it to plaintiff rather than Congress to decide whether immediate review is available.

Finally, regardless of the inconvenience and hardship that transfer imposes upon plaintiff, this court should not issue the writ simply because plaintiff objects to the transfer. *See Bankers Life*, 346 U.S. at 383–84, 74 S.Ct. at 148–49; *see also Leahy*, 193 F.2d at 304–05 ("The mere fact that the petitioners will be put to the inconvenience and expense of what may prove to be a wholly abortive trial is an argument which might be addressed to Congress in support of legislation authorizing interlocutory appeals but does not constitute ground for invoking mandamus power.").

I therefore do not agree with the majority that the language of § 1406(a) fails to authorize a transfer over plaintiff's objection where the district court finds no personal jurisdiction.

Petitioner asserts, alternatively, that § 1406(a) applies only to venue and, in consequence the district court's action was unauthorized. Although the majority does not decide whether § 1406(a) covers a case where there is a finding of no personal jurisdiction, I must express my view thereon because it poses an independent issue as to the district court's authority to transfer here.

Several other courts of appeals, citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), have interpreted § 1406(a) to permit transfers when the district court finds an absence of jurisdiction over the defendants. *See Porter v. Groat*, 840 F.2d 255 (4th Cir.1988); *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77 (2d Cir.1978); *Taylor v. Love*, 415 F.2d 1118 (6th Cir.1969), *cert. denied*, 397 U.S. 1023, 90 S.Ct. 1257, 25 L.Ed.2d 533 (1970); *Mayo Clinic v. Kaiser*, 383 F.2d 653 (8th Cir.1967); *Dubin v. United States*, 380 F.2d 813 (5th Cir.1967). I find myself in agreement with the sentiments and analysis set forth in *Porter*:

> If we were applying the statute as a matter of first impression, we would

agree that the district court correctly interpreted it [not to authorize transfer]. But § 1406(a) has been read more expansively by other courts. In essence, they read "wrong division or district" to mean any impediment to a decision on the merits for some reason other than mere lack of venue.... We decide to align ourselves with those jurisdictions....

840 F.2d at 257.

The reason for my conclusion does not require further elaboration. The district court thus possessed, in my view, statutory authority to transfer the case despite the existence of venue. I would not issue the writ.